UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| |
|---|
| In re Application of LUIS JAVIER MARTINEZ SAMPEDRO for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding |

Civil No. 3:18mc47 (JBA)

October 30, 2018

**RULING ON RESPONDENTS' MOTIONS TO QUASH AND PETITIONER'S MOTION TO COMPEL**

On April 20, 2018, Petitioner Luis Javier Martínez Sampedro filed an *ex parte* application for leave to conduct discovery for use in connection with a proceeding pending in the Madrid Commercial Court No. 4 pursuant to 28 U.S.C. § 1782. (Pet.'s App. [Doc. # 1] at 1.) The Court granted that *ex parte* Application, finding that Mr. Sampedro had met the requirements of Section 1782. (Order Granting Application [Doc. # 10] at 1.) Respondents Contrarian Capital Management, LLC, Silver Point Capital, L.P., and David Reganato ("the Fund Respondents") and Respondent Norman Raúl Sorensen Valdez moved separately to quash the resulting subpoenas served by Petitioner. (Funds' Mot. to Quash [Doc. # 23] at 1; Sorensen's Mot. to Quash [Doc. # 29] at 1.) Petitioner then moved to compel compliance by all Respondents with the served subpoenas. (Mot. to Compel [Doc. # 32] at 1.) For the following reasons, the Fund Respondents' and Mr. Sorensen's Motions to Quash all subpoenaed discovery are DENIED in part and GRANTED in part, and Petitioner's Motion to Compel is DENIED without prejudice.

**I. Background**

Petitioner Luis Javier Martínez Sampedro and his brother José Antonio Martínez Sampedro were previously the Vice Chairman and Chairman of the Board of and are currently shareholders of Codere, a Spanish Company. (Pet.'s App. at 2.) Respondents Contrarian and Silver

Point ("the Funds") are both Codere shareholders. (*Id.* at 3.) Respondent Reganato is a member of Codere's Board of Directors, appointed by Silver Point. (*Id.* at 4.) Respondent Sorensen is also a member of Codere's Board of Directors but was not appointed by the Sampedro brothers or by the Funds. (*Id.*)

Petitioner is presently engaged in both litigation in the Commercial Court of Madrid, Spain (the "Spanish Litigation") and arbitration through the International Chamber of Commerce (the "ICC Arbitration") related to his and his brother's statuses at Codere. (Mem. Supp. Funds' Mot. to Quash [Doc. # 23-1] at 4-7.) Codere is the named respondent in the Spanish Litigation. (Ex. 1 (Spanish Complaint) to Decl. of Mercedes Fernández [Doc. # 24-1] at 1.) All four Respondents in this action (Contrarian, Silver Point, Reganato, and Sorensen) are among the named respondents in the ICC Arbitration. (Ex. 3 (ICC Req. for Arb.) to Fernández Decl. [Doc. # 24-3] at 1.)

The Fund Respondents characterize the focus of the Spanish Litigation and the ICC Arbitration as "a discrete set of events" which occurred at meetings on December 1, 2017 and January 12, 2018. (Funds' Mem. at 16.) Petitioner characterizes the focus of those proceedings as including both those meetings as well as "a longer and illegal scheme to take control of Codere" which occurred in the time period leading up to those meetings. (Pet.'s Mem. [Doc. # 42] at 17.) The general question at issue in those proceedings is the validity of the Board's removal of the Sampedro brothers from their leadership positions at Codere. (Pet.'s App. at 6. Funds' Mem. at 5-8.)

Petitioner seeks discovery from the Respondents, all of whom are Connecticut residents, for use in the Spanish Litigation. (Pet. App. at 1, 3-4.)

## II. Discussion

28 U.S.C. § 1782 authorizes district courts to order discovery from those within the court's jurisdiction "for use in a proceeding in a foreign or international tribunal . . . upon the application of any interested person." District courts have broad discretion in ordering discovery under Section 1782 but must consider its policy goals: "providing efficient means of assistance to participants in international litigation in our federal courts" and "encouraging foreign countries by example to provide similar means of assistance to our courts." *Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992).

Courts must also consider several other factors, including 1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," 2) the "receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance," 3) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies," and 4) whether the discovery request is "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-265 (2004). The parties disagree about the proper interpretation of the *Intel* factors and their application to Petitioner's request for discovery.

### A. *Intel* Factors

#### 1. Whether Respondents are participants in the foreign proceeding(s)

If the respondents in a Section 1782 action are also "participant[s] in the foreign proceeding," then the need for U.S.-based discovery is "not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. The parties debate both what "foreign proceeding" should be considered and what being a "participant" entails.

Petitioner argues that the Spanish Litigation is the relevant "foreign proceeding," because that is the proceeding for which he has requested discovery from this Court, regardless of whether he also intends to use any discovery he obtains under Section 1782 in the ICC Arbitration. (*See* Pet.'s Mem. at 2, 21.) Respondents argue that both the Spanish Litigation and the ICC Arbitration should be considered, suggesting that Petitioner's application for discovery for use in the Spanish Litigation is merely a ruse for obtaining discovery for use in the ICC Arbitration. (*See* Funds' Reply [Doc. # 44] at 2-7.)

Where a district court authorizes Section 1782 discovery for use in one foreign proceeding, it need not analyze every foreign proceeding in which the petitioner is involved under the Section 1782 and *Intel* framework. *See In re Accent Delight International Ltd*, 869 F.3d 121, 134 (2d Cir. 2017) (upholding Section 1782 discovery order in which the district court analyzed only one foreign proceeding but permitted use of discovery obtained in additional foreign proceedings which had not been analyzed). However, if a petitioner is "attempting to use foreign litigation as a ruse for obtaining discovery for use in other foreign proceedings," such behavior "might support denying the Section 1782 application altogether." *Id.* at 135. A respondent who believes that the petitioner is engaging in such behavior "can and should bring evidence of such chicanery" to the district court's attention. *Id.*

The Fund Respondents allege that Petitioner's request for discovery for use in the Spanish Litigation is a ruse intended to disguise his goal of obtaining discovery for use in the ICC Arbitration. (*See* Funds' Reply at 1-2, 5.) In support of that argument, the Fund Respondents point to Petitioner's allegedly inadequate disclosure of the ICC Arbitration in its *ex parte* application, its resistance of a protective order against use of discovery obtained in the ICC Arbitration, and its failure to address the application of the *Intel* factors to the ICC Arbitration in its briefing. (*See id.*

4

at 2-3.) However, the Fund Respondents have not explained why such behavior on the part of the Petitioner constitutes a "ruse," especially in light of the Second Circuit's holding in *Accent Delight* that it "see[s] no reason why the number or identity of the foreign proceedings in which a successful applicant may use discovery produced pursuant to [Section 1782] would fall outside th[e] discretionary grant" of authority to district courts to fashion discovery orders.

Though the Respondents may be entitled to request a protective order limiting or preventing the use in the ICC Arbitration of discovery obtained in this Court, Petitioner need not argue and this Court need not consider the application of the *Intel* factors to each foreign proceeding in which Petitioner is involved. Therefore the Court will analyze the validity of Petitioner's Section 1782 request with respect to only the Spanish Litigation but will separately consider arguments as to the permissible scope of use of any discovery obtained by Petitioner in this action.

Petitioner argues that only Codere is a "participant" in the Spanish Litigation because it is the sole named respondent in that action. (*See* Pet.'s Mem. at 8.) He argues further that the documents he seeks "presumably are not in the possession of Codere" and therefore not subject to discovery orders in the Spanish Litigation. (*Id.* at 10)

Respondent Sorensen argues that because he has already been compelled to testify in the Spanish Litigation and could potentially be required to do so again, he is a "participant" in that action. (*See* Sorensen's Mem. Supp. Mot. to Quash [Doc. # 29-1] at 4, n.3.) Where, as with Mr. Sorensen's testimony, the discovery sought is "within the foreign tribunal's jurisdictional reach, and thus is accessible absent resort to § 1782," the first *Intel* factor weighs against ordering Mr. Sorensen to provide testimony in the United States under that section. *See In re Eli Lilly & Co.*, No. 3:09-mc-296 (AWT), 2010 WL 2509133, at *2 (D. Conn. June 15, 2010). Because Mr. Sorensen has

"already been compelled to testify in the Spanish Litigation . . .," (Sorensen's Mem. at 4 (internal citations omitted)), he appears to be subject to the foreign tribunal's jurisdictional reach, at least as to providing testimony.

The Fund Respondents argue that although Codere is the sole named respondent in the Spanish Litigation, that proceeding "focuses" on the acts of the Respondents in this action and Petitioner could, "(if the request meets the applicable legal requirements)[, ] seek additional documents and testimony in the Spanish Action from those entities." (Funds' Mem. at 12.) The Fund Respondents further argue that they are "participants" in the Spanish Litigation because they are at the "epicenter" of the dispute; because the Funds are shareholders of Codere, the named respondent; and because Petitioner named Respondents Reganato and Sorensen as witnesses to be interrogated at a hearing in his "Spanish 'Demanda'." (*Id.*)

The parties dispute the ability of the Spanish court to order discovery from the Fund Respondents since they are not the named respondent in that action. (*See, e.g.* Ex. 1E Part 1 (Declaration of Bernardo M. Cremades Roman) to Mot. to Quash [Doc. # 35-6] at 6; Funds' Mem. at 12.) Under *Intel*, the relevant question is whether the entities at issue are "participants" in the foreign proceeding—not whether they are named parties in the foreign proceeding. The Respondent's argument that they are "participants" in the Spanish Litigation can only be based on the existence of Mr. Sorensen's and Mr. Lavelle's testimony in the Spanish court. (Funds' Reply at 8.) Because they admit that "no employee of Respondent Contrarian . . . has testified," (*id.* at n.5), make no allegation that Mr. Reganato has actually been compelled to testify before the Spanish court, (Funds' Mem. at 12), and make no argument that Respondent Silver Point itself is subject

to any discovery orders in that proceeding,[1] their position weighs only weakly against discovery under the first *Intel* factor.

Despite the parties' many submissions, the exact extent of discovery that the Spanish court may order from the Respondents remains unclear to this Court. Moreover, the Court declines to conduct an extensive examination of Spanish discovery procedures to resolve that question. *See Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 2995) ("We do not believe that an extensive examination of foreign law regarding the existence and extent of discovery in the forum country is desirable" and "[w]e do not read the statute to condone speculative forays into legal territories unfamiliar to federal judges" in the context of Section 1782 applications.). It is clear that Respondent Sorensen has been compelled to testify in that litigation. It is also clear that a representative of Respondent Silver Point has been similarly compelled to testify. It remains unclear the extent to which the Spanish court could compel Sorensen and Silver Point to produce documents or could compel any discovery from Contrarian and Reganato. And where the extent of the interplay with a foreign proceeding is unclear, it is "far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright." *Id.* at 1101.

### 2. The receptivity of the Spanish court to U.S. assistance

The receptivity of the Spanish court to "U.S. federal-court judicial assistance" also impacts the propriety of granting Section 1782 discovery. *Intel*, 542 U.S. at 264. However, the Court

---

[1] Mr. Lavelle, a Codere Board member appointed by Silver Point who is not a respondent in this Section 1782 action, has been compelled to testify in the Spanish Litigation. (Funds' Mem. at 12.)

similarly declines to engage in "speculative forays" into "unfamiliar" legal territories to determine the likely reaction of the Spanish court to any Section 1782 discovery. *See Euromepa*, 51 F.3d at 1099. Instead, in considering the "nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or court" to U.S.-based assistance, *Intel*, 542 U.S. at 264, the Court must "consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa*, 51 F.3d at 1100.

This factor does not, as Respondents argued, require the Petitioner to give notice to the Spanish court so that it may indicate its receptivity to foreign discovery, nor does it turn on the admissibility of any Section 1782 discovery in the Spanish proceeding. (*See* Funds' Mem. at 13; Funds' Reply at 8.) Analysis of this factor should also not devolve into a "battle-by-affidavit of international legal experts" asking the district court to rule on a question of foreign law, as has occurred between the parties in this case. *Euromepa*, 51 F.3d at 1099. Rather, the Court should consider only "authoritative proof . . . as embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures." "Absent this type of clear directive, however, a district court's ruling should be informed by Section 1782's overarching interest in providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'" *Id.* at 1100 (internal quotations omitted).

In the absence of any evidence from the Respondents of a Spanish declaration that specifically addresses and rejects the use of discovery gathered abroad, and in light of the policy goals of Section 1782, this factor weighs in favor of granting at least some of Petitioner's subpoenaed discovery.

### 3. Whether Petitioner's subpoenas conceal an attempt to circumvent Spanish proof-gathering restrictions

The Court must also consider whether Petitioner's request for discovery "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. Like the other *Intel* factors, this factor should not cause district courts to delve deeply into an analysis of the discovery procedures of foreign countries. "Proof-gathering restrictions are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information." *Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015) (emphasis in original) (internal quotations omitted).

Therefore, the question here is not whether the Spanish court would order the requested discovery if it had jurisdiction over the Respondents. Instead, the Court should consider only whether there are Spanish "proof-gathering restrictions" that are "akin to privileges" which would prohibit the acquisition or use of the material sought. Nonetheless, the Respondents base their argument that this factor weighs against Petitioner's request on their contention that Spanish discovery procedures would not provide for the type of discovery requested here. (*See* Funds' Mem. at 14; Funds' Reply at 8; Sorensen's Mem. at 5-6.) In the absence of any showing that discovery sought by Petitioner's subpoenas would circumvent Spanish proof-gathering restrictions that are akin to privileges, this factor weighs in favor of granting Section 1782 discovery.

### 4. Whether Petitioner's request is unduly intrusive or burdensome

Finally, district courts should also consider whether a petitioner's Section 1782 request is "unduly intrusive or burdensome" and such requests "may be rejected or trimmed." *Intel*, 542 U.S.

at 265. However, Section 1782 is "an invitation for district judges to fashion creative means of implementing the statute's double goal," and "[a]bsent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa*, 51 F.3d at 1102. Weighing the *Intel* factors, the Court rejects Respondents' position that no discovery should be available to Petitioner under Section 1782.

### B. Limitations on discovery

In granting Section 1782 discovery, district courts have considerable discretion to craft orders which implement the statute's goals and respond to the parties' concerns. *See id.*

The first concern is Petitioner's and Respondents' dispute over the appropriate breadth of document production. Respondents argue that both the requested search terms and the requested date range are too broad, (Funds' Mem. at 16), specifically taking issue with Petitioner's request for "all documents" relating to "Codere, its management, or the Sampedro Brothers." They argue that a lengthy date range is inappropriate because the events at issue in the Spanish Litigation occurred only on two days. (*Id.*) Petitioner responds that the requested terms and dates are appropriate but indicates a willingness to "discuss appropriate search protocol (including search terms and custodians) to capture responsive documents while minimizing discovery burdens." (Pet.'s Mem. at 16.) Respondents counter that Petitioner has offered "no serious response" to their concerns and "no proposal to narrow the subpoenas." (Funds' Reply at 9.)

The Court directs the parties to meet and confer in a good faith effort to resolve their dispute about the appropriate breadth of document production in light of this Ruling that some discovery may be had under Section 1782. Respondents seem to have taken the position that any document production should focus only on the December 1, 2017 and January 12, 2018 meetings

10

at issue in the Spanish Litigation. (*Id.* at 16.) Though Respondents may be entitled to seek a shorter date range than Petitioner requests, Petitioner's allegations about a scheme which culminated in the actions taken at those meetings suggest that documents from some time period leading up to those meetings would be relevant, especially given that the Respondents' stated reason for the removal of Petitioner and his brother encompassed actions and decisions which allegedly occurred over several months or years. (*See* Funds' Mem. at 4-5.) The Court expects that, at a minimum, documents from the time period between the December 1, 2017 meeting and the January 12, 2018 could be highly relevant. While search terms like "Codere" and "Sampedro" are too general, searches related to the run up to Petitioner's removal would likely be less burdensome for the Respondents.

Second, Respondents argue that if Petitioner is entitled to Section 1782 discovery in this case, any such discovery should be reciprocal. (Funds' Mem. at 17-18; Funds' Reply at 10.) While noting that the Court can order reciprocal discovery in a Section 1782 case, *see In re Esses*, 101 F.3d 876 (2d Cir. 1996), the Respondents make no persuasive argument as to why the Court should order such reciprocity, nor have they identified or requested any particular documents which are within this Court's jurisdiction beyond indicating their desire for a "similarly broad" search that is "commensurate in scope to what petitioner receives." (Funds' Reply at 10.) But in the absence of a particularized argument for imposing reciprocity and without specification as to the testimony or documents sought, the Court declines to grant reciprocal discovery at this time.

Finally, Respondents argue that any Section 1782 discovery should be limited to use in the Spanish Litigation but not in the ICC Arbitration. Though no such limitation is required under *Accent Delight* even where the additional international proceedings might not independently qualify for Section 1782 judicial assistance, the Court does have discretion to so limit any Section

11

1782 discovery it orders. 869 F.3d at 134. However, the Court declines to limit Petitioner's use of discovered material in that way, given the absence of evidence that Petitioner's request for discovery for the Spanish Litigation is merely a ruse for obtaining evidence to use in the Arbitration. Like this Court's approach to examining the Spanish court's procedures, the Court declines to attempt to determine whether use of Section 1782 discovery would be "utterly contrary to the character and policies of private international arbitration," as the Respondents argue. (*See* Funds' Mem. at 13.) The Court knows of no reason why the ICC Arbitrator would not be free to reject or decline to rely upon documents produced pursuant to Section 1782, should he or she so choose. Therefore, any materials produced pursuant to Section 1782 in this case will not be subject to any limitation on their use from this Court.

### III. Conclusion

For the foregoing reasons, the Fund Respondents' Motion to Quash [Doc. # 23] is GRANTED only as to further testimony from a representative of Silver Point, and DENIED in remaining part consistent with the limitations discussed above. Mr. Sorensen's Motion to Quash [Doc. # 29] is GRANTED as to providing testimony, and DENIED as to document production consistent with the limitations discussed above. The parties are directed to meet and confer pursuant to D. Conn. Local Rule 37 and in accordance with this ruling. Petitioner's Motion to Compel [Doc. # 32] is DENIED without prejudice to immediately renew if the parties are unable to reach an agreement within 14 days of this Ruling regarding the appropriate scope of discovery.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 30th day of October 2018.