UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| In re Application of LUIS JAVIER MARTINEZ SAMPEDRO for an Order Pursuant to 28 U.S.C. § 1782 to Compel Discovery for Use in a Foreign Proceeding | : : : : : : : | CASE NO. 3:18 MC 47 (JBA)<br><br>JANUARY 10, 2019 |

## RULING ON PETITIONER'S EMERGENCY MOTION TO COMPEL WITHHELD DOCUMENTS (DOC. NO. 99)

### I. BACKGROUND

Familiarity with the Court's prior rulings is presumed. Pursuant to the Ruling on Petitioner's Renewed Motion to Compel that the Court issued on November 30, 2018 (Doc. No. 78), Respondents were to complete document production and provide Petitioner with a privilege log by December 10, 2018. *See In re Sampedro*, No. 3:18-MC-47 (JBA), 2018 WL 6264834, at *3 (D. Conn. Nov. 30, 2018). On December 28, 2018, Petitioner filed this pending Emergency Motion to Compel Improperly Withheld Documents (Doc. No. 99), alleging that Respondents[1] had improperly withheld documents on the basis of a claim of attorney-client privilege, and that Respondents' privilege logs were both untimely and deficient. On that same date, Petitioner filed an Emergency Motion to Expedite his Emergency Motion to Compel (Doc. No. 101), which the Court granted. (Doc. No. 104). On January 2, 2019, Respondents submitted their memorandum in opposition to the Emergency Motion to Compel (Doc. No. 109), and on January 3, 2019, Petitioner filed his reply memorandum (Doc. No. 113). The motion has been referred to this Magistrate Judge for a ruling (Doc. No. 107).

---

[1] Petitioner's motion seeks to compel production from only the Fund Respondents: Silver Point Capital, L.P., Contrarian Capital Management, LLC, and David Regenato.

The Court held an on-the-record telephonic status conference on January 4, 2019. (*See* Doc. No. 120). During the conference, the Court directed the parties to meet and confer to narrow down the number of documents at issue and to submit for the Court's *in camera* review any documents that remained in dispute.[2] (*See* Doc. Nos. 122 & 123). On Monday, January 7, 2019, Respondents submitted documents for the Court's *in camera* review and indicated that approximately 1,350 out of 2,600 documents remained in dispute. (*See* Doc. No. 123 at 1 n.1). The Court held an additional telephonic status conference on January 7, 2019, during which Respondents indicated that they had submitted for the Court's *in camera* review only the communications involving G3M, a third-party consulting firm, that were generated prior to January 12, 2018. Respondents indicated that two other categories of documents were not submitted for *in camera* review because, in their view, the Court could resolve the legal issue of whether the documents were privileged without reviewing their contents. These two categories of documents related to communications with Linklaters, LLP, a law firm hired by the directors of Codere (except the Sampedro brothers) and communications with G3M after January 12, 2018. (*See* Doc. No. 123 at 1). Petitioner maintained that the Court should not review any of the withheld documents *in camera*, as Respondents' claim of privilege was untimely and defective.

Accordingly, this ruling will address the following: (1) whether Respondents must produce documents between Linklaters, LLP and the other Codere directors; (2) whether Respondents must produce documents involving G3M pre-dating January 12, 2018;[3] and (3) whether Respondents must produce documents involving G3M post-dating January 12, 2018.

---

[2] During the status conference, the Court denied Petitioner's request to grant the motion to compel based solely on the alleged untimeliness and insufficiency of Respondents' privilege log, and the lack of a redaction log.

[3] The documents that fall into this category are the ones that Respondents submitted for the Court's *in camera* review.

For the reasons detailed below, Petitioner's Emergency Motion to Compel Improperly Withheld Documents (Doc. No. 99) is GRANTED in part and DENIED in part.

II. DISCUSSION

Following the parties' most recent meet and confer efforts, Petitioner's argument is that the Court should compel Respondents to produce the withheld documents still in dispute, as the documents are not privileged for two primary reasons: first, the attorney-client privilege cannot properly be asserted against Petitioner because he is a director of Codere and, therefore, had a reasonable expectation that he was a client of the board's counsel, Linklaters; and second, third parties such as G3M were copied on the communications between the board and Linklaters and, therefore, Respondents waived the attorney-client privilege with respect to those communications.

    A. WHETHER ATTORNEY-CLIENT PRIVILEGE CAN BE ASSERTED AGAINST PETITIONER DESPITE HIS ROLE AS A DIRECTOR OF CODERE

Petitioner argues that, because he is a director of Codere, Respondents cannot properly withhold communications between the other directors and Linklaters on the basis of attorney-client privilege. (Doc. No. 99 at 5–12; Doc. No. 122 at 2). Respondents maintain that Petitioner's role as a director does not entitle him to access the privileged communications between the other directors and Linklaters, as Linklaters was retained for the sole purpose of providing the other directors with legal advice regarding the removal of Petitioner and his brother. (Doc. Nos. 8–11; Doc. No. 123 at 2).

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A*, 258 F.R.D. 95, 99 (S.D.N.Y. 2009) (quoting *In re County of Erie*, 473 F.3d 413, 418 (2d Cir. 2007)). "Attorney-client privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to

3

the lawyer to enable him to give sound and informed advice." *Id.* at 99–100 (quoting *Upjohn v. United States*, 449 U.S. 383, 390, 101 S. Ct. 677, 66 L.Ed.2d 584 (1981)). "[A]s a general matter, a corporation cannot assert the [attorney-client] privilege to deny a director access to legal advice furnished to the board during the director's tenure." *Id.* at 104. This general rule "follows from a doctrine that treats a director and a corporation as 'joint clients' of the company's attorneys for purposes of privilege claims." *Id.*

Although Petitioner's role as a director of Codere made him a "joint client" of Codere's attorneys, the undersigned concludes that Petitioner's role as a director does not prevent Respondents from asserting the attorney-client privilege over certain communications with Linklaters. A subset of Codere's directors, apart from Petitioner and his brother, retained Linklaters only for the purpose of obtaining legal advice about how to remove Petitioner and his brother from their roles in the company. This is distinguishable from an attorney rendering general legal advice to a Board of Directors and is likewise different from rendering advice about the best ways in which a company's director can fulfill his or her fiduciary duties. *See Fitzpatrick v. Am. Int'l Group, Inc.*, 272 F.R.D. 100, 106 (S.D.N.Y. 2010) (explaining that cases that have expanded the access of a company's directors to attorney-client communications are "fundamentally at odds with basic principles of attorney-client privilege in the corporate context . . . ."). Under these facts, the communications between Linklaters and the directors fall within the attorney-client privilege, and Respondents have carried their burden in showing that they have properly asserted the privilege against Petitioner as to this category of documents.

### B. WHETHER INCLUSION OF G3M WAIVED THE ATTORNEY-CLIENT PRIVILEGE

Petitioner next argues that, even if Respondents can assert the attorney-client privilege against Petitioner, the inclusion of G3M on communications between the Linklaters attorneys and

4

the other directors waived the attorney-client privilege. Respondent's arguments as to this category of documents can be broken down into two arguments. For communications that occurred prior to January 12, 2018, Respondents maintain that G3M's inclusion on the communications did not waive the attorney-client privilege because G3M's expertise as to Codere was necessary for Linklaters to provide effective legal advice. (*See* Doc. No. 109 at 11–12; *see also* Doc. No. 123 at 2). For communications that occurred after January 12, 2018, Respondents argue that, by this time, "G3M became fully integrated into [Codere's] executive office . . . . This gave G3M functional equivalent status sufficient to prevent any waiver of privilege." (Doc. No. 109 at 13).

1. G3M DOCUMENTS FROM ON OR BEFORE JANUARY 12, 2018

The documents that fall into this category were those that Respondents submitted to the Court for *in camera* review. *See supra* note 3. Petitioner argues that, even if it is true that G3M was working with Linklaters to "execute legal strategy," the attorney-client privilege does not extend to these communications, as the privilege typically does not protect communications between lawyers and third-party advisors. (*See* Doc. No. 99 at 8; *see also* Doc. No. 122 at 3). Respondents argue in opposition that, for this category of documents, the communications that included G3M remained privileged "because (1) there was a reasonable expectation of confidentiality under the circumstances; and (2) disclosure to the third party was necessary for the client to obtain informed legal advice." (Doc. No. 109 at 15).

Generally, "the attorney-client privilege applies only to communications between lawyers and their clients"; however, the Second Circuit has "held that 'under certain circumstances . . . the privilege for communication with attorneys can extend to shield communications to others when the purpose of the communication is to assist the attorney in rendering advice to the client.'"

5

*United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) (quoting *United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir. 1995)). The extension of the attorney-client privilege to non-lawyer consultants "has always been a cabined one, and '[t]o that end, the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client.'" *Id.* (quoting *United States v. Ackert*, 169 F.3d 136, 139 (2d Cir. 1999)). Typically, the non-lawyer consultant's advice must be "necessary, or at least highly useful for the effective consultation between the client and the lawyer which the privilege is designed to permit." *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961); *see Exp.-Imp. Bank v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005).

"[W]here an attorney seeks out a third party in order to obtain information that his client does not have, the third party's role is 'not as a translator or interpreter of client communications,'" and the attorney-client privilege is not extended to the third party's discussions with the lawyer. *Montesa v. Schwartz*, No. 12-Civ.-6057 (CS)(JCM), 2016 WL 3476431, at *5 (S.D.N.Y. June 20, 2016). "What is vital to the privilege is that the communication be made in *confidence* for the purpose of obtaining *legal* advice *from the lawyer*. If . . . the advice sought is the [consultant's] rather than the lawyer's, no privilege exists." *Adlman*, 68 F.3d at 1499–1500 (quoting *Kovel*, 296 F.2d at 922) (emphasis in original).

After completing *in camera* review of the documents that Respondents submitted, the Court concludes that, in large part, G3M's consulting and advice was "at least highly useful" for Linklaters to provide effective legal advice to its director-clients. *See Kovel*, 296 F.2d at 922. The documents reflect that the directors who retained Linklaters sought Linklaters's legal advice regarding the removal of Petitioner and his brother, and that G3M's input informed the legal advice

that Linklaters provided. G3M provided Linklaters with information about the company's structure, which enabled Linklaters to tailor its legal advice to the directors.

There are documents, however, on which no one from Linklaters was included. The documents in this category are found in Tab 4 of the documents submitted for *in camera* review.[4] Because these communications were not made "for the purpose of obtaining legal advice from the lawyer," Respondents cannot assert the attorney-client privilege and, therefore, Petitioner is entitled to review them. Although these documents discuss very generally one point of advice given by Linklaters, which shall not be disclosed,[5] the communication revolves around a report that was not generated by Linklaters, which discusses recommendations for reorganizing Codere and not the removal of Petitioner and/or his brother. Accordingly, Respondents shall turn over the "Tab 4" documents, subject to the redactions noted in footnote 5, to Petitioner.[6] For the remainder of the communications that occurred prior to January 12, 2018 on which G3M was included, Respondents did not waive the attorney-client privilege and, thus, properly withheld the documents as privileged.

### 2. G3M DOCUMENTS FROM AFTER JANUARY 12, 2018

Petitioner maintains that Respondents have improperly withheld documents falling into this category. Respondents argument with respect to these documents is that, after January 12,

---

[4] These documents contain the following Bates numbers: CTRL0000013486, CTRL0000013487, CTRL0000013488, CTRL0000013489, CTRL0000013490, CTRL0000013491, CTRL0000013492, and CTRL0000013493.

[5] The privileged information appears on the first page of Tab 4, Bates number CTRL0000013486, and is repeated on Bates numbers CTRL0000013488, CTRL0000013489, CTRL0000031490, CTRL0000013491, CTRL0000013492, and CTRL0000013493. Respondents shall redact the following language, which appears on the first line of the email dated November 19, 2017 after the words "David/Tim," through the second line of the email just before the word "we." This same language shall be redacted from the pages with Bates number CTRL0000013488, CTRL0000013489, CTRL0000013490, CTRL0000013491, CTRL0000013492, and CTRL0000013493.

[6] During an on-the-record telephone conference call on January 9, 2019, the Court informed the parties of its ruling on this motion and was advised by Respondents that they would turn over these documents by 11:59 p.m. on January 9, 2019, as the documents are necessary for a deposition being conducted on January 10, 2019.

2018, G3M employees became the "functional equivalent" of Linklaters' clients, as they were *de facto* employees of Codere. (Doc. No. 109 at 12–13). Petitioner argues that the G3M employees cannot be *de facto* employees of Codere, because the G3M consulting agreement "expressly *excludes* G3M employees from the Codere organizational structure." (Doc. No. 99 at 10 (emphasis in original & internal quotation marks omitted)).

Multiple courts in the Second Circuit have concluded that, when a non-lawyer advisor is the "functional equivalent of an employee," the attorney-client privilege extends to communications between the *de facto* employee and the company's counsel. *See Narayanan v. Sutherland Glob. Holdings, Inc.*, 285 F. Supp. 3d 604, 615 (W.D.N.Y. 2018); *see also Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.*, No. CV-05-5155 (SJF)(AKT), 2008 WL 5231831, at *3 (E.D.N.Y. Dec. 11, 2008); *Exp.-Imp. Bank v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005); *Ross v. UKI Ltd.*, No. 02-Civ-9297, 2004 WL 67221, at *4 (S.D.N.Y. Jan. 15, 2004); *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, No. 01-Civ-3016, 2002 WL 31556383, at *2 (S.D.N.Y. Nov. 15, 2002); *In re Copper Mkt. Antitrust Litig.*, 200 F.R.D. 213, 218–19 (S.D.N.Y. 2001). In determining whether a non-lawyer consultant is the "functional equivalent" of a company's employee, courts look to the following factors: (1) "whether the consultant had primary responsibility for a key corporate job"; (2) "whether there was a continuous and close working relationship between the consultant and the company's principals on matters critical to the company's position in litigation"; and (3) "whether the consultant is likely to possess information possessed by no one else at the company . . . ." *Narayanan*, 285 F. Supp. 3d at 615. (citing *Exp.-Imp. Bank*, 232 F.R.D. at 113); *In re Bieter Co.*, 16 F.3d 929, 933–34, 938 (8th Cir. 1994).

Here, Respondents have established that, after January 12, 2018, G3M employees became the "function equivalent" of Codere employees. Respondents submitted affidavits that establish that, following the removal of Petitioner and his brother, G3M employee Vicente Di Loreto became the Chief Executive Officer of Codere, and the other G3M employees served as "the primary liaison with external counsel on matters arising out of the termination" of Petitioner and his brother, including "assisting outside counsel in the defense of arbitration and litigation commenced by [Petitioner and his brother] relating to their termination, and in conducting internal investigations into the matters relating to the disputes." (*See* Doc. No. 111 at ¶¶ 6 & 7). This evidence shows that the G3M employees were integrated into the corporate structure of Codere rendering them *de facto* employees of the company. Accordingly, Respondents properly withheld as privileged the attorney-client communications on which G3M was included from after January 12, 2018.

III. CONCLUSION

For the reasons detailed above, Petitioner's Emergency Motion to Compel Improperly Withheld Documents (Doc. No. 99) is GRANTED in part and DENIED in part.[7]

This is not a Recommended Ruling. This is an order regarding discovery which is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); and D. CONN. L. CIV. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon timely made objection.

Dated this 10th day of January, 2019 at New Haven, Connecticut.

   /s/ *Robert M. Spector*, USMJ
Robert M. Spector
United States Magistrate Judge

---

[7] The Court declines Respondents' request to impose sanctions on Petitioner for an alleged failure to meet and confer.