UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| In re Application of LUIS JAVIER MARTINEZ SAMPEDRO for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding | Civil No. 3:18mc47(JBA)<br><br>December 27, 2019 |
|---|---|

**RULING ON OBJECTIONS TO JUDGE SPECTOR'S RULINGS**

Petitioner Luis Javier Martinez Sampedro objects ([Doc. # 142]) to Magistrate Judge Robert M. Spector's ruling ([Doc. # 133]) on Petitioner's Emergency Motion to Compel Withheld Documents ([Doc. # 99]). Respondents Silver Point Capital, L.P., Contrarian Capital Management, LLC, David Reganato, and Normal Raul Sorensen Valdez (together, "Respondents") object ([Doc. # 223]) to Judge Spector's ruling (Doc. # 217) on several motions by Petitioner and Respondents. For the reasons that follow, both objections are overruled.

**I. Background**

The Court assumes the parties' familiarity with the underlying facts of this case. Petitioner filed an Emergency Motion to Compel Production of Improperly Withheld Documents ([Doc. # 99]), which this Court referred to Judge Spector for ruling. Petitioner alleged that Respondents had improperly withheld documents on the basis of claimed attorney-client privilege and that Respondents' privilege logs were untimely and deficient, and thus he sought an order compelling the Respondents to produce certain documents. Judge Spector granted Petitioner's request as to pre-January 12, 2018 communications between the Codere Board and G3M which did not include any representative of Linklaters, but denied Petitioner's request as to the Board's communications with Linklaters, including those involving representatives of G3M, and as to post-January 12, 2018 communications with G3M. (Ruling on Emergency Mot. to Compel [Doc. # 133]). Petitioner now

argues that this ruling was in error, urging the Court to order the Respondents to produce all withheld documents. (Pet.'s Obj. [Doc. # 142] at 1.)

Separately, Petitioner moved for permission to provide discovery obtained through this action to the Comisión Nacional del Mercado de Valores (the "CNMV"), a Spanish regulatory agency to which Petitioner submitted a complaint about Codere ([Doc. # 198]), and Respondents moved for a protective order prohibiting Petitioner from sharing confidential materials with the CNMV ([Doc. # 206]). Judge Spector granted Petitioner's motion to provide discovery to the CNMV, and denied Respondents' motion for protective order. (Ruling on Mots. for Permission and Protective Order [Doc. # 217].) Respondents now argue that this ruling was in error, urging the Court to prohibit Petitioner from providing discovery obtained through this action to the CNMV. (Resps.' Obj. [Doc. # 223] at 1.) Respondents also moved for a stay of that ruling pending resolution of their objection. (Mot. to Stay [Doc. # 218].)

**II. Discussion**

A district court may modify or set aside a magistrate judge's decision on "[n]ondispositive [m]atters" only if "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Findings of fact "are reviewed for clear error" but conclusions of law "are reviewed *de novo.*" *Mobil Shipping & Transp. Co. v. Wonsild Liquid Carriers Ltd.*, 190 F.3d 64, 67 (2d Cir. 1999). Under that standard, the reviewing district court may not modify the magistrate judge's decision "simply because [it] would have decided the case differently" and instead "must ask whether, on the entire evidence, it is left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (internal quotations omitted). "Matters concerning discovery generally are considered 'nondispositive' of the litigation." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). Thus such decisions of magistrate judges under § 1782 are generally reviewed

by district courts under the clearly erroneous standard. *See, e.g., In re XPO Logistics, Inc.*, 2017 WL 6343689 (S.D.N.Y. 2017) (reviewing for clear error the magistrate judge's decision to grant in part petitioner's request for discovery under § 1782).

### A. Continued Availability of Section 1782 Discovery

Respondents argue that Petitioner is no longer entitled to any Section 1782 discovery in this action. They contend that "Petitioner cannot meet the burden of establishing that he is in a position to use the evidence from these proceedings in a Spanish action," (Resps.' Opp. to Pet.'s Obj. [Doc. # 151] at 10 (internal quotations omitted)), because the court in the Spanish litigation, which formed the basis for Petitioner's Section 1782 request, "unequivocally denied Petitioner's ability to use Respondents' discovery [in that litigation], holding that 'the admission of more documentary evidence is not appropriate'" during a January 2019 hearing, (Resps.' Obj. at 13 (quoting Aff. of Félix J. Montero [Doc. # 152] ¶ 35)). Therefore, Respondents argue, any evidence obtained through these Section 1782 proceedings is no longer "for use in" the Spanish litigation, and the statutory requirements of Section 1782 discovery are no longer satisfied. *See* 28 U.S.C. § 1782 (requiring, among other things, that discovery be "for use in a foreign proceeding or international tribunal").

According to Respondents, this development renders Petitioner's objection regarding withheld documents moot, because he is no longer entitled to any additional discovery from Respondents under Section 1782. (Resps.' Opp. to Pet.'s Obj. at 1). Respondents also contend that the ruling regarding the provision of discovery to the CNMV was legal error, arguing that Judge Spector should have found good cause to prohibit Petitioner from providing Section 1782 discovery to the CNMV because the requirements of Section 1782 are no longer met. (Resps.' Obj. at 13-14.)

3

Respondents' argument relies on their contention that Petitioner is no longer able to "use" any discovery obtained through these proceedings in the Spanish litigation as a result of the Spanish Court's January 2019 ruling. But as Judge Spector noted, the "for use" requirement of Section 1782 is not as narrow as Respondents suggest. In ruling on applications under Section 1782, district courts "should not consider the *admissibility* of evidence in the foreign proceeding." *Brandi-Dohrn v. IKB Deutche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012). Instead, courts should focus "on the *practical ability* of an applicant to place a beneficial document—or the information it contains—before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017). In the Section 1782 context, the Second Circuit has "relied on the plain meaning of 'use' as indicating 'something that will be employed with some advantage or serve some use in the proceeding—not necessarily something without which the applicant could not prevail.'" *Id.* at 132 (internal citation omitted).

Judge Spector concluded that "the Spanish Court's ruling that the § 1782 discovery is inadmissible does not foreclose Petitioner from using the discovery" in that proceeding because Petitioner has the opportunity to place the information contained in that discovery before the Spanish Court by using those documents to, for example, "prepare witnesses, craft questions, and present his case." (Ruling on Mots. for Permission and Protective Order at 8). In light of the Second Circuit's clear indication that the "for use in" a foreign proceeding requirement is not an admissibility requirement, Respondents have not demonstrated that Judge Spector's ruling on this question was in error.

Respondents also argue that even if the statutory requirements of Section 1782 discovery are met, the Court nonetheless should use its discretion to decline to permit continued discovery because the Spanish Court is not receptive to U.S.-based discovery. (Resps.' Opp. to Pet.'s Obj. at

4

10-11.) Courts may use discretion to deny "[S]ection 1782 applications where, although the statutory requirements of [S]ection 1782 were met, the twin goals of the statute were not." *Brandi-Dohrn*, 673 F.3d at 83. And in using that discretion, a "court presented with a § 1782(a) request may take into account . . . the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel Corp. v. Advanced Micro Devices, Inc.*, 541 U.S. 241, 264 (2004). But in ruling on Petitioner's initial Section 1782 application, this Court already considered that factor and rejected Respondents' argument absent any specific indication that the Spanish Court is unreceptive to "discovery gathered abroad." (Ruling on Resps.' Mot. to Quash and Pet.'s Mot. to Compel [Doc. # 55] at 8.) Because the January 2019 statement of the Spanish Court does not specifically address that court's receptivity to foreign discovery, the Court declines to reconsider its weighing of the *Intel* factors.[1]

Thus the January 2019 statements of the Spanish Court indicate neither that Petitioner's objection regarding the withheld documents is moot, nor that Judge Spector's finding that Respondents had not demonstrated good cause why documents should not be shared with the CNMV was in error.

### B. Production of Withheld Documents

---

[1] The declaration of Félix J. Montero includes both the Spanish original and an English translation of the relevant portion of the transcript of the January 2019 hearing. (*See* Montero Decl. ¶¶ 34-35 ("Furthermore, in view of the provisions of article 283 of our Spanish Procedural Law, the documents provided in these numbers [C-25 to C-53] are not considered necessary, nor useful, nor pertinent. As I have said, in view of the abundant documentary evidence that already exists in the proceedings, that has been provided both with the statement of claim and with the statement of defence, as well as the evidence that was also filed in the interim measures proceedings and in view of the enormous amount of evidence that must be practiced in trial. As I have said, the admission of more documentary evidence is not appropriate.").)

Following efforts to meet and confer to resolve pending discovery disputes, Petitioner moved for an order compelling Respondents to produce certain documents. Petitioner objects to Judge Spector's ruling on that motion on several grounds. First, he argues that Judge Spector "erred when he declined to hold that respondents had failed to perfect their privilege claims, because their privilege log was untimely and deficient." (Pet.'s Obj. at 1.) Second, Petitioner argues that "Judge Spector erred as a matter of law when he declined to rule that respondents had failed to discharge their burden to demonstrate that the withheld documents were privileged" because "the privilege log did not include any detail establishing that the withheld documents were created for the purpose of rendering legal advice." (*Id.*) Third, Petitioner argues that even if Respondents' privilege logs and claims were sufficient, "they should have been ordered to produce two categories of documents as a matter of law": 1) the "Director Documents," which consist of "communications between Codere directors and attorneys at Linklaters, who rendered advice to directors of Codere concerning board matters (including respondents), as well as withheld communications involving other Codere advisors and employees"; and 2) the "G3M Documents," which consist of "respondents' communications with G3M (a third-party consulting firm retained by Codere as an independent contractor)" after January 12, 2018. (*Id.* at 2.)

1. **Timeliness of Privilege Logs**

Petitioner argues that "Judge Spector should have ordered production of all withheld documents on the ground that respondents failed to timely perfect their privilege claims." (*Id.* at 8.) Petitioner notes that Judge Spector "explained during the January 4 hearing that [Respondents'  privilege] log was 'clear[ly]' untimely." (*Id.* at 10 (quoting Tr. of 1/4/19 Hearing at 6-7).) He argues that Judge Spector therefore erred when he "nonetheless held, without explanation, that he would not use respondents' breach of the Court-ordered deadline 'as a justification for disallowing the

privilege.'" (*Id.* at 10 (quoting Tr. of 1/4/19 Hearing at 38).) Petitioner argues that this alleged error was an "abuse of discretion" because the "appropriate remedy for an untimely and deficient log is not a do-over; it is a finding that privilege claims have not been perfected and cannot be invoked, particularly where (as here) the delay is flagrant." (*Id.* at 11 (citing cases).)

Petitioner has demonstrated that ordering the production of withheld documents is one possible appropriate remedy for an untimely privilege log. (*See id.* at 12 (citing *Davis v. Hunt Leibert Jacobson P.C.*, 2016 WL 3349629, at *3 (D. Conn. June 10, 2016) (ordering production of unredacted documents for failure to produce redaction log)).) But Petitioner has not demonstrated that that remedy was the *only* appropriate remedy available to Judge Spector. *See, e.g., In re DG Acquisition Corp.*, 151 F.3d 75, 81 (2d Cir. 1998) (finding that party "should have raised privilege" at an earlier time, but holding that the bankruptcy court "was not required to conclude as a matter of law that the privilege had been waived because of the untimely assertion" given the "wide discretion" available to trial courts "in ruling on even mundane discovery matters"); *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 131 (N.D.N.Y. Feb. 9, 2007) ("The Court could declare all of the purported privileges waived. And, yet, adjudging all of these documents as waived would be too austere a remedy when the deficiencies can be readily rectified at this juncture of the litigation.").

Judge Spector has worked extensively with the parties in this litigation and has demonstrated a thorough understanding of the nature of their disputes. In light of that expertise and the variety of appropriate remedies available to courts in response to an untimely privilege log, Petitioner has not demonstrated that Judge Spector abused his discretion or committed clear error in declining to bar Respondents' privilege claims.

### 2. Adequacy of Privilege Logs

Petitioner argues that Judge Spector erred in declining to order Respondents to produce documents included on Respondents' privilege log because the "log for these documents was inadequate to meet respondents' burden to substantiate their privilege claims." (Pet.'s Obj. at 13.) Specifically, he argues that the log was "legally deficient, because the log did not include information showing that, behind each log entry, 'there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice,' as was their burden." (*Id.* (quoting *United States v. Construction Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)).) Petitioner also argues that Judge Spector erred in declining to order production of the "90% of documents not submitted to the Court *in camera*," for which he alleges there "was a complete failure of proof on the element that the log left unaddressed—whether the documents were created for the purpose of seeking legal advice." (*Id.* at 16.)

Respondents argue that their privilege log was "sufficiently detailed" because its "descriptions are sufficient for the reader to understand why a particular document is being withheld as privileged." (Resps.' Opp. to Pet.'s Obj. at 22-23.) Respondents note that "petitioner does not cite any authority that would require production of the contested documents 'as a matter of law'" instead of "undertaking the thorough process of ascertaining whether the documents were indeed privileged (as Judge Spector did)" through further review of the logs and documents. (*Id.* at 24.)

Again, Petitioner has demonstrated that ordering production of the withheld documents may have been an appropriate response to Respondents' privilege logs. But he has failed to demonstrate that it was the *only* possible appropriate response such that Judge Spector's decision not to do so was clear error. Consideration of Respondents' privilege logs and of the documents

8

submitted for *in camera* review is a highly detailed factual endeavor, to which it is clear from the hearing transcripts and written ruling that Judge Spector dedicated substantial time and thorough analysis. Thus, in the absence of anything more from Petitioner than a disagreement with Judge Spector's factual conclusions about the level of detail included in Respondents' logs, and without evidence of clear error, setting aside Judge Spector's ruling on this issue is unwarranted.

### 3. Director Documents

Petitioner argues that the Director Documents should not have been withheld because he is "entitled to receive them because he was at all relevant times (and remains) a director of Codere, and thus, whatever privilege exists may not be asserted [by the Board] against" him. (Pet's Obj. at 2.) Respondents argued that "Petitioner's role as a director does not entitle him to access the privileged communications between the other directors and Linklaters, as Linklaters was retained for the sole purpose of providing the other directors with legal advice regarding the removal of Petitioner and his brother." (Ruling on Emergency Mot. to Compel at 3.)

"[A]s a general matter, a corporation cannot assert the [attorney-client] privilege to deny a director access to legal advice furnished to the board during a director's tenure." *Newmarkets Partners, LLC v. Sal. Oppenheim Jr. & Cie. S.C.A.*, 258 F.R.D. 95 (S.D.N.Y. Feb. 26, 2009). But Judge Spector concluded that "[a]though Petitioner's role as a director of Codere made him a 'joint client' of Codere's attorneys," his "role as a director does not prevent Respondents from asserting the attorney-client privilege over certain communications with Linklaters." (Ruling on Emergency Mot. to Compel at 4.) Judge Spector found that a "subset of Codere's directors, apart from Petitioner and his brother, retained Linklaters only for the purpose of obtaining legal advice about how to remove Petitioner and his brother from their roles in the company." (*Id.*) Judge Spector determined that this arrangement was "distinguishable from an attorney rendering general legal

9

advice to a Board of Directors." (*Id.*) He therefore concluded that "[u]nder these facts, the communications between Linklaters and the directors fall within the attorney-client privilege." (*Id.*)

Petitioner argues that "the law permits a subset of a corporate board to withhold their communications with legal counsel from a fellow director *only* upon a showing that, at the time of the communication," certain aspects of an adverse relationship among board members are present. (Pet.'s Obj. at 20-21.) He argues that Judge Spector's ruling was in error for failing to find that this exception applied and that its requirements had been met before permitting Respondents to withhold the Director Documents. But in support of this argument, Petitioner cites only cases from the Delaware Court of Chancery, which are binding on neither Judge Spector nor this Court. (*See id.* at 21 (citing cases).)

Petitioner also argues that he is not "aware of any principle of law that would otherwise permit respondents to withhold their communications with counsel retained by a subset of the board of directors to advise on matters relating to the corporation." (*Id.* at 22.) But again that argument fails to demonstrate that Judge Spector's ruling was based on legal error. And Petitioner's references to Linklaters as the "company's lawyer" suggest a disagreement with Judge Spector's factual conclusion that Linklaters was retained by a *subset* of the Board for the sole purpose of advising with regard to the removal of Petitioner and his brother, but Petitioner offers no evidence to demonstrate that that conclusion was clear error.[2] Petitioner's additional arguments that the

---

[2] Petitioner cites declarations which asserted that "Linklaters was asked to provide legal advice on *corporate governance issues relating to the executive roles of the Martinez Sampedro [brothers]* [sic], including on their eventual termination from those roles" in support of his argument that there is "no evidence in the record" to support Judge Spector's factual conclusion that Linklaters was retained to advise regarding the removal of the Sampedro brothers. (Pet.'s Obj.

10

evidence in the record did not support Judge Spector's factual findings are similarly insufficient to demonstrate that those findings were clear error. (*See* Pet.'s Obj. at 24-26; Resps.' Opp. to Pet.'s Obj. at 30 (citing evidence in record in support of Judge Spector's conclusion).)

Separately, Petitioner also argues that even if Respondents properly withheld communications between Board members and Linklaters, Judge Spector's ruling "should still be reversed in part, because" that conclusion "does not justify withholding all of the Director Documents." (Pet.'s Obj. at 27.) Specifically, Petitioner argues that certain groups of Director Documents which 1) "do not include Linklaters at all," 2) "include Linklaters, but also include other Codere employees," and 3) include "subset directors, Linklaters, and/or G3M on or prior to January 12, 2018" were improperly withheld. (*Id.*)

First, as to the Director Documents which did not include Linklaters at all, Petitioner argues that "there was no factual showing that any of these 179 documents—none of which were offered for *in camera* review—reflected *any* privilege, let alone a privilege that could be asserted against petitioner" because there has been "no factual showing that" the Codere employees included on those communications "were working for only a subset of the board of directors when they were making th[ose] communications." (*Id.* at 27-28.) Respondents argue that these documents were "properly withheld" and that "privilege for those documents was established on the privilege log." (Resps.' Opp. to Pet.'s Obj. at 31.) In the absence of anything more than Petitioner's bare assertion that there was "no factual showing" that these documents reflected any

---

at 24 (internal quotation omitted) (emphasis and alteration in Petitioner's objection)). It is unclear to this Court how the quoted declaration indicates that Judge Spector's conclusion regarding the scope of Linklaters' representation was in error, let alone clear error which would require this Court to set aside his factual determination.

11

privilege, Petitioner has not demonstrated that Judge Spector's factual conclusion regarding the content and privilege of those documents was clear error.

Second, as to the Director Documents which include both Linklaters and other Codere employees, Petitioner argues that those documents were improperly withheld because "[e]ither Linklaters represented the board members in their capacities as such" which would arguably entitle Petitioner to some or all of the communications between the Board and Linklaters, "or . . . they represented the individual directors in some other capacity," as Judge Spector found, "in which case, at a minimum, the sharing of Linklaters' communications with Codere employees broke privilege." (Pet.'s Obj. at 28-29.) Respondents argue that these documents "were properly withheld and described on the privilege log, and Petitioner has no sweeping right to them." (Resps.' Opp. to Pet.'s Obj. at 32.) Judge Spector's Ruling appears not to have directly addressed this question, and thus this Court cannot determine whether that decision was based on legal error or clear factual error. (*See* Ruling on Emergency Mot. to Compel at 3-4.) The Court now asks Judge Spector to consider specifically the question of whether the subset of Director Documents on which other Codere employees were included were properly withheld by the Respondents.

Third, Petitioner argues that Director Documents from prior to January 12, 2018[3] which include Board members, Linklaters representatives, and G3M representatives were improperly withheld, and that Judge Spector's ruling regarding that subset of documents was in error. The Court will address these documents below with the pre-January 12, 2018 G3M Documents.

### 4. G3M Documents

---

[3] Respondents argued that as of January 12, 2018, G3M had become so "fully integrated" into Codere's executive office that it acquired "functional equivalent status sufficient to prevent any waiver of privilege." (Ruling on Emergency Mot. to Compel at 5.)

12

### a. Pre-January 12, 2018

When a communication is "made in confidence for the purpose of obtaining legal advice from the lawyer," the inclusion of a third party on that communication does not necessarily destroy the attorney-client privilege, especially where the inclusion of that third party is "necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (holding that inclusion of an accountant would not necessarily destroy attorney-client privilege and analogizing to the inclusion of a linguist to provide translation services). Judge Spector concluded that the pre-January 12, 2018 communications involving G3M were privileged because, after completing in camera review of the documents that Respondents submitted, he concluded that "in large part, G3M's consulting and advice was 'at least highly useful' for Linklaters to provide effective legal advice to its director-clients." (*Id.* at 6.) Based on his review of the documents, Judge Spector found that the "directors who retained Linklaters sought Linklaters's legal advice regarding the removal of Petitioner and his brother, and that G3M's input informed the legal advice that Linklaters provided." (*Id.* at 6-7.) He concluded that "G3M provided Linklaters with information about the company's structure, which enabled Linklaters to tailor its legal advice to the directors." (*Id.* at 7.)

Petitioner argues that Judge Spector incorrectly applied the *Kovel* rule by failing to consider the Second Circuit's subsequent elaboration upon that rule in *United States v. Ackert*, 169 F.3d 136 (2d Cir. 1999). In *Ackert*, the Second Circuit characterized the holding in *Kovel* as "recogniz[ing] that the inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client." 169 F.3d at 139. The *Ackert* court rejected a claim

13

of privilege based on *Kovel* where the third party was "sought out" for information neither the client nor the lawyer had "about [a] proposed transaction and its tax consequences," but the attorney "was not relying on [the third party] to translate or interpret information given by [the attorney] to his client." *Id.* Because the third party's "role was not as a translator or interpreter of client communications, the principle of *Kovel* did not" apply. *Id.* at 141. Thus the *Ackert* court narrowed the *Kovel* rule to apply only to those third parties acting as or functioning similarly to interpreters and translators.

But Judge Spector cited *Ackert* and *United States v. Mejia*, 655 F.3d 126 (2d Cir. 2011), a later case applying the proper third-party consultant standard, in recognizing that the "extension of the attorney-client privilege to non-lawyer consultants has always been a cabined one, and '[t]o that end, the privilege protects communications between a client and an attorney, not communications that prove important to an attorney's legal advice to a client." (Ruling on Emergency Mot. to Compel at 6.) He recognized that attorney-client privilege does not extend to situations where the "third party's role is 'not as a translator or interpreter of client communications.'" (*Id.* (quoting *Montesa v. Schwartz*, No. 12-Civ.-6057 (CS)(JCM), 2016 WL 3476431, at *5 (S.D.N.Y. June 20, 2016)).) Based on those legal standards and his *in camera* review of the relevant documents, Judge Spector then concluded that the inclusion of G3M on otherwise privileged documents did not break that privilege. Petitioner has failed to demonstrate that Judge Spector's ruling relied upon any legal error, and he has similarly failed to show that Judge Spector's factual conclusion, driven by his review of the documents, was clear error.

### b. Post-January 12, 2018

Petitioner argues that the post-January 12, 2018 G3M Documents should not have been withheld because Judge Spector's ruling that G3M became the "functional equivalent" of Codere's

14

employee was legal and factual error. Judge Spector found that "[m]ultiple courts in the Second circuit have concluded that, when a non-lawyer advisor is the 'functional equivalent of an employee,' the attorney-client privilege extends to communications between the *de facto* employee and the company's counsel." (Ruling on Emergency Mot. to Compel at 8 (citing cases).) Judge Spector cited the factors courts look to in "determining whether a non-lawyer consultant is the 'functional equivalent' of a company's employee," (*id.*), and concluded that "Respondents have established that, after January 12, 2018, G3M employees became the "function[al] equivalent' of Codere employees," (*id.* at 9). That conclusion was based on Judge Spector's review of "affidavits that establish that, following the removal of Petitioner and his brother, G3M employee Vincente Di Loreto became the Chief Executive Officer of Codere, and the other G3M employees served as 'the primary liaison with external counsel on matters arising out of the termination' of Petitioner and his brother." (*Id.*) Judge Spector concluded that "[t]his evidence shows that the G3M employees were integrated into the corporate structure of Codere rendering them *de facto* employees of the company." (*Id.*)

As to the claim of legal error, Petitioner contends that Judge Spector's "ruling (in following other cases endorsing the 'de facto employment' test) is inconsistent with Second Circuit law (such as *Ackert*) holding that third parties break privilege." (Pet.'s Obj. at 32.) But Petitioner acknowledges that Judge Spector's ruling followed the line of cases from within this Circuit which apply the "de facto employee" test, and he simply states conclusorily that those cases are "inconsistent with Second Circuit law (such as *Ackert*)." (*Id.*) PPetitioner has not demonstrated that Judge Spector's decision was based on legal error.

As to the claim of factual error, Petitioner claims that the "record evidence was not there" to demonstrate that G3M was the functional equivalent of a Codere employee. (*Id.*) He argues that

15

as to the G3M employees other than Mr. Di Loreto, only "conclusory affidavits stating that '[t]he remaining partners of G3M became fully integrated into the Company's executive office" support Judge Spector's conclusion. (*Id.* at 33.) Petitioner argues that the contract between G3M and Codere contradicts those affidavits by stating that "no employee of either party 'shall be subject to the other Party's power to manage and organize its activity, nor, therefore, shall they be included in its organizational structure.'" (*Id.*) But Petitioner acknowledges that affidavits in the record supported Judge Spector's factual conclusion about the integration of G3M employees, and his disagreement with the weight Judge Spector afforded to those affidavits and the Codere-G3M contract does not demonstrate that Judge Spector committed clear error in reaching that conclusion.

### C. Disclosure to the CNMV

"Both 28 U.S.C. § 1782 and the Protective Order in this matter require that any discovery must be for use in a foreign 'proceeding.'" (Resps.' Obj. at 10.) But "Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings." *Intel*, 542 U.S. at 258. Rather, judicial assistance from American federal courts is "available 'whether the foreign or international proceeding *or investigation* is of a criminal, civil, administrative, or other nature.'" *Id.* at 259 (quoting S. Rep. No. 1580, at 9) (emphasis added in *Intel*). Moreover, "the 'proceeding' for which discovery is sought under § 1782(a) must be in reasonable contemplation, but need not be 'pending' or 'imminent.'" *Id.* at 247.

Respondents argue that Judge Spector "committed legal error . . . by finding that Petitioner's sending a complaint to the CNMV placed an investigation by that agency within reasonable contemplation." (Resps.' Obj. at 10.) Respondents contrast the CNMV proceedings with those at issue in *Intel*, characterizing the holding in *Intel* as that "Section 1782 discovery was

16

available only once a dispositive quasi-judicial administrative ruling, reviewable by a court, was within reasonable contemplation." (*Id.* at 12.) "In other words," Respondents argue, "the investigation itself is not a 'proceeding' under Section 1782, but it does indicate that proceeding may be forthcoming and, as such, an investigation can serve as the basis for a request under Section 1782." (*Id.*) Respondents conclude that "unlike in *Intel*, there are absolutely no objective indicia that an investigation is underway." (*Id.*)

Although Respondents frame their objection to Judge Spector's ruling in terms of "legal error," it is more accurately described as a disagreement with Judge Spector's factual conclusion that an investigation is underway such that "a dispositive ruling by" the CNMV, "reviewable by" a court, is "within reasonable contemplation." *Intel*, 542 U.S. at 259.

Judge Spector determined that "[b]ased on the factual record related to Petitioner's July 2, 2019 motion (Doc. No. 198), . . . a proceeding is within reasonable contemplation." (Ruling on Mots. for Permission and Protective Order at 6.) Specifically, Judge Spector concluded that on "the basis of Attorney Moya's affidavit, it is apparent that, at this moment, the CNMV is reviewing the complaint that Petitioner and his brother submitted jointly to determine whether there exists a 'well-founded suspicion of infringement.'" (*Id.*) Based on his review of the factual record, Judge Spector concluded that "[d]uring the CNMV's 'review' of the complaint, it may ask the complainant for additional documents to aid in its assessment of whether" such suspicion exists, and that at "the conclusion of its 'review,' the CNMV will determine whether it will initiate a sanctioning proceeding, the outcome of which would be reviewable by a Spanish court." (*Id.* (internal citations omitted).) Respondents offer no evidence to suggest that these factual conclusions about the CNMV proceedings were clear error such that this Court should be left with

the "definite and firm conviction that a mistake has been committed," and thus the Court will not disturb Judge Spector's factual findings. (*See generally* Resps.' Obj. at 12.)

Moreover, Judge Spector's factual findings make clear that, contrary to Respondents' assertions, the procedural posture of the CNMV investigation is similar to that of the European Commission at issue in *Intel*. In *Intel*, the Second Circuit explained that "the European Commission . . . enforces European competition laws and regulations" and that its "'overriding responsibility' is to conduct investigations into alleged violations of the European Union's competition prescriptions." 542 U.S. at 254. Once it receives a complaint, the Commission "conducts a preliminary investigation," during which it "may take into account information provided by a complainant, and it may seek information directly from the target of the complaint." (*Id.* (internal quotation omitted).) "Ultimately," the "preliminary investigation results in a formal written decision whether to pursue the complaint," and if the Commission "declines to proceed, that decision is subject to judicial review." *Id.* If the Commission does pursue a complaint, after several intermediate procedural steps, the Commission's final decision is then subject to judicial review. *Id.* at 254-55.

As with the investigation by the European Commission in *Intel*, the CNMV "review" is the first of many procedural steps which could ultimately lead to a final decision subject to judicial review. After reviewing the European Commission investigation procedures, the *Intel* court concluded that there was "no warrant to exclude the European Commission, to the extent that it acts as a first-instance decisionmaker, from § 1782(a)'s ambit." *Id.* at 258. Based on the factual record before him, Judge Spector concluded that the "review" period conducted by the CNMV, a first-instance decisionmaker whose decisions are subject to judicial review, places an

administrative proceeding within reasonable contemplation. This Court sees neither any clear factual error nor any legal error which would require Judge Spector's ruling to be set aside.

### III. Conclusion

For the foregoing reasons, Respondents' objection [Doc. # 223] is OVERRULED, and Petitioner's objection [Doc. # 142] is OVERRULED except as to the question of whether Respondents properly withheld the subset of Director Documents on which other Codere employees were included, which Judge Spector will now address. Respondents' Motion to Stay [Doc. # 218] is DENIED as moot.

IT IS SO ORDERED.

/s/

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 27th day of December 2019.